**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x

| | |
|---|---|
| INGRID V. ARNEBERG, : | |
| : | |
| Plaintiff, : | Case No. 16-cv-08955 |
| : | |
| : | **COMPLAINT** |
| v. : | |
| : | |
| GEORGES BERGÈS, and GEORGES BERGÈS : | |
| GALLERIES, LLC, : | |
| : | **DEMAND FOR JURY TRIAL** |
| Defendants. : | |

------------------------------------------------------------- x

      Plaintiff, INGRID V. ARNEBERG, by and through her undersigned attorneys, complains against Defendants, GEORGES BERGÈS and GEORGES BERGÈS GALLERIES, LLC, as follows:

## I. JURISDICTION AND VENUE

      1.    This action is brought, and subject matter jurisdiction lies within this Court, pursuant to 28 U.S.C. Sections 1331 and 1338.  This Court has federal question jurisdiction in this matter in that Plaintiff seeks relief under the Securities Exchange Act of 1934 ("Exchange Act"), 48 Stat. 881, 15 U.S.C. §§ 78a, *et seq*. and under Rule 10b-5 codified at 17 C.F.R. Section 240.10b-5.  In particular, Plaintiff alleges violations of Sections 10(b) and 29(b) of the Exchange Act, codified as 15 U.S.C. § 78j(b) and 15 U.S.C. § 78cc(b) respectively.

      2.    Venue lies within this Court pursuant to 28 U.S.C. Sections 1391(b)(2)-(3), 1391(c) and 1391(d), in that a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this district and Defendants reside and/or are doing business in this district.

## II. PARTIES

      3.    Plaintiff, INGRID V. ARNEBERG ("Arneberg"), is an individual and citizen of

the State of New York, residing in New York, New York.

4.     Defendant, GEORGES BERGÈS ("Bergès"), is an individual and citizen of the State of New York, residing in New York, New York.

5.     Defendant, GEORGES BERGÈS GALLERIES, LLC ("Bergès Gallery" or the "LLC"), is a limited liability company organized and existing pursuant to the laws of the State of New York, with its principal place of business located at 462 West Broadway, New York, New York 10012.   Bergès is the President and sole manager of Bergès Gallery, a business operating an art gallery in the City of New York.

### III.  ALLEGATIONS COMMON TO ALL COUNTS

6.     Beginning in or around March 2015, Bergès, as a promoter, both individually and as the owner and manager of Bergès Gallery, solicited Arneberg to purchase an equity or membership interest in Bergès Gallery.

7.     In the course of the solicitation of Arneberg, Bergès represented to Arneberg that, through the LLC, he intended to open and run a gallery in the Soho area of the City of New York and at other locations throughout the world for profit.

8.     At that time, Bergès represented to Arneberg, both orally and in writing, that he had sold twenty-four (24) paintings from the artist John Ransom Phillips (who would be one of the artists for Bergès Gallery at an average price of $50,000, in the eighteen-month period prior to the solicitation of Arneberg. (*See* Exhibit "B," p. 3).

9.     At that time, Bergès represented to Arneberg that he would not take a salary for the operation of the LLC.  Bergès also promised Arneberg, both orally and in writing, at the same time that his compensation would come exclusively through distributions made to him as a member of Bergès Gallery and, more specifically, his share of the net distributable profits of the

LLC to which he was entitled under the Operating Agreement.

10.     At that time, Bergès also represented to Arneberg that he had personally paid all the start-up costs of Bergès Gallery out of his pocket, that Bergès had no capital account in the LLC, and that the LLC would open for business with no debt. (A true and correct copy of the First Amendment and Complete Restatement of the Operational Agreement of Georges Bergès Galleries, LLC, a New York Limited Liability Company, dated April 13, 2015, is attached hereto as Exhibit "A" and made a part hereof.)

11.     At that time, Bergès offered to sell six (6) units in Bergès Gallery for $500,000 each.  Each of these units would entitle the owner (member) to 5 percent interest in Bergès Gallery.

12.     In the course of the solicitation of the sale of the membership interest to Arneberg in the LLC, Bergès provided Arneberg with a written Executive Summary. (A true and correct copy of the Executive Summary is attached hereto as Exhibit "B" and made a part hereof.)

13.     At that time, Bergès represented to Arneberg, both orally and in writing, that in order for the offering to go forward and to "execute the project" he would need to raise at least $1,500,000 (the "Minimum Money Raise"). (*See* Exhibit "B," p. 5). Given the revenue projected by the LLC, the Minimum Money Raise was necessary to pay go-forward operating costs, including, among other things, rent, security, staff, professional fees, taxes, travel expenses, public relations, insurance, and to generate the working capital necessary to purchase the art that he represented he would offer for sale in the gallery, and, by fourth quarter of 2015, to open up pop-up art galleries in Shanghai, Hong Kong, London, Mexico City and New York (Brooklyn or Upper Manhattan) (*See* Exhibit "B," p. 4).

14.     Bergès also represented in the Executive Summary that Bergès Gallery would

"participate in targeted art fairs: Art Basel in Miami, Art Basel in Hong Kong, Frieze in London and New York, and Zona Moca in Mexico City." (Exhibit "B," p. 4).

15.    At that time, Bergès and the LLC represented in the Operating Agreement that Bergès had made no capital contribution to the LLC. Berges and the LLC further represented in the Operating Agreement that "Georges Bergés's LLC Interest/Units are issued based upon an estimation of the value that his experience and expertise contributes to the Company as a viable operating entity."  (*See* Exhibit A, at A).

16.    At that time, and as stated in the Executive Summary, Bergès represented to Arneberg that Per Arneberg, Ingrid Arneberg's father, had committed to purchase one unit of the LLC for $500,000. (*See* Exhibit "B," p. 5).

17.    Between April 13, 2015, and April 17, 2015, in reliance on the representations made by Bergès, in his capacity as a promoter and manager of Bergès Gallery, Arneberg paid Bergès Gallery $500,000 for 1.5 units, entitling Arneberg to a 7.5 percent interest in Bergès Gallery.

18.    Arneberg's ownership interest in Bergès Gallery did not entitle her to exercise any control over the governance of Bergès Gallery or to the LLC's operations.  Arneberg was a passive investor in Bergès Gallery.

19.    The investment was entered into for the purpose of earning profits from the operation of the LLC.

20.    Under the agreement between Arneberg and Bergès, and according to Bergès' representations, the profits earned by Arneberg were to result from Bergès' operation of the LLC and were based upon Bergès' operating decisions.

21.     Following the receipt of Arneberg's $500,000 contribution in exchange for 1.5 units in the LLC, Bergès Gallery raised only an additional $220,000 from other investors, bringing the total amount of money raised to $720,000; $780,000 less than the Minimum Money Raise, which in Bergès' own words, was the "minimum required to execute project." (See Exhibit "B," p. 5).

22.     Despite failing to make the Minimum Money Raise, Bergès and Bergès Gallery failed and refused to return Arneberg's $500,000 investment to her.

23.     Instead, almost immediately following receipt of Arneberg's payment, Bergès deposited the $500,000 into his own personal bank account and reimbursed himself for his purported start-up costs, which he claims exceed $500,000.

24.     Almost immediately following the $500,000 payment by Arneberg, Bergès claimed that the LLC was in deep financial trouble, was delinquent in its rent and other operating costs and that Arneberg needed to make additional capital contributions to the LLC.

25.     In addition, after receiving Arneberg's $500,000 payment, Bergès claimed he was owed hundreds of thousands of dollars in "guaranteed payments" from Bergès Gallery pursuant to an employment or other agreement that he had never disclosed to Arneberg.

26.     At no time did Bergès use the $500,000 payment received from Arneberg for the operating costs and expenses of the LLC and never opened up any of the promised pop-up galleries referred to in Paragraph 13 above.

## COUNT I
### (Violation of 15 U.S.C. § 78 (j)(b) and 15 U.S.C. § 78ccb and 17 C.F.R. § 10-b5 – Rescission/Damages - Against Bergès and Bergès Gallery)

27.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 26 of the Complaint as Paragraph 27 of Count I of the Complaint as though fully pled herein.

28.     As alleged herein, Defendants employed devices, schemes and artifices to defraud Arneberg, made untrue statements of material facts and omitted material facts and engaged in acts, practices and a course of business that operated as a fraud and deceit upon Arneberg.

29.     The acts and omissions alleged herein occurred in connection with the sale of a "security," namely, the membership units in Bergès Gallery purchased by Arneberg.

30.     As alleged herein, Arneberg invested $500,000 in a common enterprise, namely, Bergès Gallery, and was led to expect profits from her investment solely due to the efforts of Bergès and Bergès Gallery.

31.     A member, like Arneberg, in a limited liability company that is manager-managed and organized and existing under the laws of the State of New York, like Bergès Gallery, is a passive investor.

32.     Defendants' sale of a non-managing membership in the LLC was made for the stated purpose of allowing Arneberg to share in the profits of the LLC as a result of Berges' operation of the LLC; was a passive investment, and with no rights to materially participate in the governance of the LLC; and, therefore, constitutes the sale of a "security" under the federal securities laws.

33.     In truth of fact, Bergès had not sold twenty-four (24) pieces of art work by the artist John Ransom Phillips in the eighteen (18) month period immediately preceding his solicitation of Arneberg at an average price of $50,000 each.

34.     At the time of the solicitation of Arneberg, Bergès intended to use the monies paid by Arneberg for his own personal benefit and to fund his undisclosed purported capital contribution in the LLC and rights to "guaranteed payments" from the LLC and not for the go-forward benefit of Bergès Gallery as alleged in Paragraph 13 herein.

35.     At the time of the solicitation of Arneberg, Bergès and Bergès Gallery had no intention to return the monies raised if the LLC did not meet the Minimum Money Raise.

36.     Arneberg relied on the truth of the representations referenced above in Paragraphs 8 through 16 in making her investment of $500,000 into the LLC.

37.     At the time of the solicitation of Arneberg, Bergès failed to inform Arneberg that Per Arneberg had declined to make any investment in Bergès Gallery.

38.     At the time of the solicitation of Arneberg, Bergès Gallery failed to disclose to Arneberg that Bergès purportedly had an employment or other form of agreement with the LLC entitling him to "guaranteed payments" of $25,000 per month.

39.     Defendants made above-described misrepresentation and omissions, with full knowledge that they were false when made.

40.     Defendants made the above-described misrepresentation and omissions for the purpose of inducing Arneberg to purchase an interest as a non-managing member in the LLC.

41.     Information demonstrating the falsity of the above-described misrepresentations and omissions were within Defendants' possession and control.

42.     Arneberg justifiable relied upon the above-described misrepresentations and omissions in making a $500,000 investment in the LLC.

43.     As a result of these misrepresentations and omissions, the Defendants were not able to execute the project as represented, and the LLC and its operations were, and are, doomed to failure.

44.     As a result of the false representations and omissions of material facts alleged above, Arneberg's investment in the LLC has been rendered worthless; and, she has suffered an

economic loss in the amount of $500,000, plus interest, and in the amount of attorneys' fees, expenses and costs incurred and to be incurred in the future in the prosecution of this action.

WHEREFORE, Plaintiff, INGRID V. ARNEBERG, prays that this Court enter judgment in her favor and against Defendants, GEORGES BERGÈS and GEORGES BERGÈS GALLERIES, LLC, for rescission (a judicial undoing of the transaction), or, alternatively, for compensatory damages in the amount of $500,000, plus reasonable attorneys' fees, interest and costs and for such other and further relief as is necessary or proper under the circumstances.

## COUNT II
### (Fraud - Against Bergès Gallery and Bergès)

45.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 44 of the Complaint as Paragraph 45 of Count II of the Complaint as though fully pled herein.

46.     Bergès had not sold twenty-four (24) pieces of art work from the artist John Ransom Phillips in the eighteen (18) month period immediately preceding his solicitation of Arneberg at an average price of $50,000 each.

47.     At the time of the solicitation of Arneberg, Bergès intended to use the monies paid by Arneberg for his own personal benefit and to fund his undisclosed purported capital contribution in the LLC and rights to "guaranteed payments" from the LLC and not for the go-forward benefit of Bergès Gallery as alleged in Paragraph 13 herein.

48.     At the time of the solicitation of Arneberg, Bergès and Bergès Gallery had no intention to return the monies raised if they did not meet the Minimum Money Raise.

49.     At the time of the solicitation of Arneberg, Bergès Gallery failed to disclose to Arneberg that Bergès purportedly had an employment or other form of agreement with the LLC entitling him to "guaranteed payments" of $25,000 per month.

50.     At the time of solicitation of Arneberg, Bergès Gallery failed to disclose to Arneberg that Per Arneberg had declined to make an investment in Bergès Gallery.

51.     Defendants made these misrepresentations and omissions for the express purpose of inducing Arneberg to invest $500,000 in the LLC.

52.     The representations made by Bergès alleged herein and as the sole manager of Bergès Gallery, set forth in Paragraphs 8 through 16 above, were false when made by Bergès and both Bergès and the LLC were aware they were false when made by Bergès and the LLC to Arneberg.

53.     Information relating to the falsity of these allegations was in the sole possession and control of Defendants.

54.     Arneberg justifiable relied upon the truth of these representations in deciding to invest $500,000 in the LLC.

55.     Had Defendants not made these misrepresentations and omissions, Arneberg would not have invested $500,000 in the LLC.

56.     As a result of the false representations and omissions of material facts as alleged in Paragraphs 8 through 16 and in this Count, Arneberg has been damaged in the amount of $500,000, plus interest and in the amount of the attorneys' fees, expenses and costs incurred and to be incurred in the future in the prosecution of this action.

WHEREFORE, Plaintiff, INGRID V. ARNEBERG, prays that this Court enter judgment in her favor and against Defendants, GEORGES BERGÈS and GEORGES BERGÈS GALLERIES, LLC, for compensatory damages in the amount of $500,000, plus reasonable attorneys' fees, interest and costs, punitive damages in an amount sufficient to punish and deter Defendants from engaging in such misconduct in the future, and for such other and further relief

as is necessary or proper under the circumstances.

## COUNT III
### (Breach of Contract - Against Bergès Gallery)

57.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 56 of the Complaint as Paragraph 57 of Count III of the Complaint as though fully pled herein.

58.     In soliciting Arneberg's investment in the LLC, Bergès and Bergès Gallery agreed to return Arneberg's $500,000 payment to her if Bergès Gallery failed to meet the Minimum Money Raise of $1,500,000.

59.     Bergès Gallery failed to meet the Minimum Money Raise.

60.     Notwithstanding Arneberg's demands that Bergès Gallery return her $500,000 payment to her, Bergès Gallery has failed and refused to do so.

61.     As a result of the breach of Bergès Gallery as alleged herein, Arneberg has been damaged in the amount of $500,000, plus prejudgment interest and costs.

62.     Arneberg has performed all duties and obligations she owed to Bergès Gallery in connection with this contract.

WHEREFORE, Plaintiff, INGRID V. ARNEBERG, prays that this Court enter judgment in her favor and against Defendant, GEORGES BERGÈS GALLERIES, LLC, for compensatory damages in the amount of $500,000, plus reasonable attorneys' fees, interest and costs and for such other and further relief as is necessary or proper under the circumstances.

## COUNT IV
### (Breach of Fiduciary Duty - Against Bergès)

63.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 62 of the Complaint as Paragraph 63 of Count IV of the Complaint as though fully pled herein.

64.     As the sole manager of the LLC, Bergès owed both Bergès Gallery and Arneberg, a member of the LLC, fiduciary duties of loyalty, honesty and truthfulness.

65.     As alleged herein, Bergès breached his fiduciary duties when he failed to inform Arneberg that he did not intend to return her $500,000 payment to her in the event Bergès Gallery failed to meet the Minimum Money Raise.

66.     As alleged herein, Bergès breached his fiduciary duties when he used the proceeds of the $500,000 payment made by Arneberg to repay his purported start-up costs rather than fund the on-going operations of the LLC as represented and agreed.

67.     Bergès breached his fiduciary duties to Bergès Gallery and Arneberg when he reimbursed himself for his $505,000 of purported start-up costs, many of which were personal expenses, unrelated to the start-up of the LLC, and not properly reimbursable by the LLC under any circumstances.

68.     Bergès breached his fiduciary duty to Arneberg when he failed to disclose to Arneberg that the LLC had purportedly entered into an employment or other agreement with him purportedly entitling him to "guaranteed payments" of $25,000 per month from Bergès Gallery.

69.     Bergès breached his fiduciary duties to Arneberg when he failed to inform Arneberg that he had not sold twenty-four (24) pieces of art work of John Ransom Phillips in the eighteen (18) month period immediately preceding Arneberg's $500,000 investment for a total of $1,200,000.

70.     Bergès breached his fiduciary duties to Arneberg when he failed to inform Arneberg, after she became a member in the LLC, that Per Arneberg had declined to make any investment in Bergès Gallery.

71.     Bergès breached his fiduciary duties to Arneberg when he made distributions to himself without making a distribution to Arneberg in the amount due to her as a 7.5 percent owner in the LLC.

72.     As a result of the breach by Bergès of his fiduciary duties as alleged herein, Arneberg has sustained damages in excess of $500,000, plus reasonable attorneys' fees, interest and costs.

WHEREFORE, Plaintiff, INGRID V. ARNEBERG, prays that this Court enter judgment in her favor and against Defendant, GEORGES BERGÈS, for compensatory damages in the amount of $500,000, plus reasonable attorneys' fees, interest and costs, punitive damages in an amount sufficient to punish and deter Defendant from engaging in such misconduct in the future, and for such other and further relief as is necessary or proper under the circumstances.

**COUNT V**
**(Accounting - Against Bergès Gallery)**

73.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 72 as Paragraph 73 of Count V of the Complaint as though fully pled herein.

74.     As a member of the LLC and on account of the breaches of fiduciary duties alleged herein, Arneberg is entitled to a detailed accounting from the LLC of its books and records, financial transactions, revenues and expenses and balance sheet items from the date of the inception of the LLC to the date of the order for an accounting.

WHEREFORE, Plaintiff, INGRID V. ARNEBERG, prays that this Court enter judgment in her favor and against Defendant, GEORGES BERGÈS GALLERY, LLC, for an accounting, and for such other and further relief as is necessary or proper under the circumstances.

Date: November 17, 2016

Respectfully submitted,
**INGRID V. ARNEBERG,**
Plaintiff

By: /s/ *Olga S. Dmytriyeva*
      One of Her Attorneys

Olga S. Dmytriyeva, Esq.
VOELKER LITIGATION GROUP
311 W. Superior Street, Suite 500
Chicago, Illinois 60654
T:  (312) 870-5432
F:  (312) 870-5432
olga@voelkerlitigationgroup.com