UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ingrid Arneberg, <br><br> Plaintiff, <br><br> –v– <br><br> Georges Berges Galleries, LLC, *et al.*, <br><br> Defendants. | 16-CV-8955 (AJN) <br><br> & <br><br> 17-CV-4973 (AJN) <br><br> MEMORANDUM <br> OPINION & ORDER |
| Ingrid Arneberg, <br><br> Plaintiff, <br><br> –v– <br><br> Malcolm Bricklin, <br><br> Defendant. | |

ALISON J. NATHAN, District Judge:

In these related cases stemming from Plaintiff Ingrid Arneberg's investment in an art gallery, Defendants Georges Berges and the Georges Berges Galleries LLC (the "Berges Defendants"), and Defendant Malcolm Bricklin (with the Berges Defendants, collectively, the "Defendants"), move for summary judgment based on a release Plaintiff signed in May 2016.

For the following reasons, Berges Defendants' motion for summary judgment is GRANTED in part and DENIED in part, and Bricklin's motion for summary judgment is DENIED.

1

I. **Background**

   A. **Factual History**

The following facts are not disputed except where noted.[1]

Around April 13, 2015, Plaintiff Ingrid V. Arneberg ("Arneberg" or "Plaintiff") invested $500,000 in return for a membership interest in the Georges Berges Galleries, LLC (the "Gallery") of 7.5 percent. Defendants-Counterclaimants' Answer to Plaintiff's Rule 56.1 Statement of Undisputed Facts ("Ans. Pls. 56.1"), Dkt. No. 61, ¶ 1. The other 92.5 percent was held at the time by Defendant Georges Berges, the sole manager of the Gallery. *Id.* ¶ 3. Arneberg's membership interest was memorialized in the First Amendment and Complete Restatement of the Operating Agreement, executed by the parties on April 13, 2015. Plaintiff's Answer to Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Ans. Defs. 56.1"), Dkt. No. 58, ¶ 1.

In early July 2015, the Gallery and Plaintiff executed an artist representation agreement, made effective retroactively to April 13, 2015. *Id.* ¶ 2. Under this Agreement, Arneberg would provide artwork to the Gallery on consignment that would be for sale by the Gallery. Ans. Pls. 56.1, ¶ 8. The agreement provided that it shall remain in full force and effect for so long as Plaintiff owns an interest in the Gallery unless terminated by Plaintiff by giving 60 days' written notice. Ans. Defs. 56.1, ¶ 3.

In April 2016, Berges Defendants began making requests of Arneberg for another $500,000 investment in the Gallery, which Arneberg rejected. Ans. Pls. 56.1, ¶¶ 10, 12. In May 2016, Arneberg was growing concerned about her artwork because Berges had told her the Gallery might be closing soon due to financial issues, and she did not want to lose her artwork to creditors. *Id.* ¶¶ 13-14. On May 22, 2016, Arneberg called Berges and advised him that she wanted to retrieve her artwork from the Gallery the next day. *Id.* ¶ 16.

It is at this point that the parties' stories diverge. Berges Defendants claim that during the phone call with Berges, Arneberg asked to cancel the artist representation agreement.

---

[1] All citations refer to the docket associated with 16-CV-8955 unless otherwise specified.

Defendants-Counterclaimants' Rule 56.1 Statement of Undisputed Material Facts ("Defs. 56.1"), Dkt. No. 50, ¶ 4. Defendants allege that they agreed to accommodate Arneberg's early termination and withdrawal of her work – despite Arneberg being scheduled to be part of a group show in June – in exchange for signing a release. *Id.* ¶ 5. Both parties admit that on May 23, 2016, Arneberg's fiancé, Will Marin, retrieved Plaintiff's artwork from the Gallery while Plaintiff remained in her vehicle outside the Gallery. Ans. Pls. 56.1, ¶¶ 21-23. Arneberg did not interact with Berges on May 23, 2016, although he was in the Gallery at the time. *Id.* ¶¶ 33, 41. Both parties admit that Arneberg did sign a document entitled "Release" on May 23, 2016. Ans. Defs. 56.1, ¶¶ 6-7; *see* Declaration of Daniel S. Kokhba ("Kokhba Decl."), Dkt. No. 52, Ex. C [hereafter, "Release"].

However, Arneberg claims that during her May 22 phone call with Berges, he never mentioned that she needed to sign anything as a condition of retrieving her artwork. Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Pl. 56.1"), Dkt. No. 53, ¶ 19. According to Arneberg, Berges simply told her that Jack Applegate, an employee and curator of the Gallery with whom she was familiar, would prepare her artwork for transport. *Id.* ¶ 18. Arneberg double-parked outside of the Gallery, and while her fiancé was inside the Gallery, Applegate came out to the vehicle and handed Arneberg a document he called a "receipt" for her artwork alongside a pen to sign the form. *Id.* ¶¶ 21-24. It is undisputed that Arneberg was represented by attorney Amy Jetel when making her investment in the Gallery, and that Berges Defendants' attorney, Daniel Kokhba, had communicated with Jetel to provide the Gallery's budget in 2015, and to make the request for an additional investment in 2016. Ans. Pls. 56.1, ¶¶ 2, 5-6, 11. Arneberg claims that if she had known she was being asked to sign something other than a "receipt" for the return of her artwork, she would have sought guidance from Jetel before signing. Pl. 56.1, ¶ 20.

### B. Procedural History

On November 17, 2016, Plaintiff sued the Berges Defendants for rescission/damages related to material misrepresentations under the federal securities laws (Count I), and for fraud (Count II), breach of contract (Count III; against the Gallery only), breach of fiduciary duty (Count IV; against Berges only), and for an accounting (Count V; against the Gallery only) under state common law. *See* Complaint ("Compl."), Dkt. No. 1. On December 21, 2016, the Berges Defendants answered the complaint and asserted counterclaims against Plaintiff for breach of fiduciary duty, defamation per se, and for tortious interference. Dkt. No. 15. Plaintiff moved to strike the Berges Defendants' affirmative defenses and moved to dismiss their first counterclaim. *See* Dkt. Nos. 17-18. On March 17, 2017, the Court held an initial pretrial conference and entered a case management plan and scheduling order to govern discovery. *See* Dkt. No. 27.

On May 17, 2017, Plaintiff moved for leave to file an amended complaint to add Defendant Malcolm Bricklin, alleging that her May 9, 2017 deposition of Mr. Bricklin revealed, for the first time, a cause of action against him. Dkt. No. 33. The Berges Defendants opposed Plaintiff's motion, Dkt. No. 34, but before the Court could rule on the matter, Plaintiff filed a separate complaint against Bricklin on June 30, 2017. *See* No. 17-CV-4973, Dkt. No. 1. The complaint against Bricklin alleges his participation in the same fraud charged against Berges and the Gallery. *Id.* The Court accepted the new case as related and heard arguments from the parties on how best to proceed at the previously scheduled status conference in the first action, which Bricklin's counsel also attended. *See* Dkt. Nos. 39, 43; Transcript for August 22, 2017 Conference. At the conference, the parties agreed to conduct summary judgment practice on the legal issue of the release presented here, and to stay the case pending the resolution of this motion. Dkt. No. 48. Plaintiff's motion to dismiss and motion to strike were denied without prejudice to refile after the resolution of this motion. *See id.* On September 25, 2017, both the Berges Defendants and Bricklin submitted motions for summary judgment. *See* Dkt. No. 49; 17-CV-4973, Dkt. Nos. 22, 24. The motions were fully submitted on November 13, 2017, and are now before the Court for resolution.

4

## II. Legal Standard

Summary judgment is properly granted when, after reviewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000). The court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004) (citations omitted).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is well settled that "[r]esolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party bears the initial burden of informing the court of its basis for the motion and for identifying those portions of the pleadings, depositions, and evidence that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence…on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). The opposing party "must do more than simply

show that there is some metaphysical doubt...and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (citations omitted).

## III. Discussion

The Defendants' arguments are quite simple. *See generally* Memorandum of Law in Support of Defendants-Counterclaimants Motion for Summary Judgment ("Def. Mem."), Dkt. No. 51.[2] It is undisputed that Plaintiff signed a release. The release was clear and unambiguous and barred her claims against the Gallery. *Id.* at 3-5. End of story.

Plaintiff makes a number of arguments attempting to complicate Defendants' tidy version. First, she argues that Defendants are not entitled to summary judgment on Count I because courts interpreting § 29(a) of the Securities Exchange Act mandate that "a purported release of claims under the federal securities laws is valid *only* as to mature, ripened claims of which the releasing party had knowledge before signing the release." Plaintiff's Memorandum of Law in Opposition to Defendants'-Counterclaimants' Motion for Summary Judgment ("Opp."), Dkt. No. 56, at 7 (emphasis in original) (citing *Goodman v. Epstein*, 582 F.2d 388, 402 (7th Cir. 1978)). Second, she argues the Defendants are not entitled to summary judgment on Counts I, II, III, or IV, since the release is either unenforceable or should be set aside: 1) because of a lack of consideration; 2) for having been fraudulently procured; 3) for mutual mistake; and 4) because she was not given a full and fair opportunity to consider what she was signing. *Id.* at 8-16. Third, and finally, Arneberg contends that the release is not broad enough to bar her claims and is vague and ambiguous. *Id.* at 17. The Court considers these arguments in turn.

### A. Section 29(a) of the Securities Exchange Act Complicates Defendants' Argument and Summary Judgment Is Not Warranted on Count I

Plaintiff's claim under the Securities Exchange Act centers on alleged fraudulent schemes and misrepresentations or omissions of material facts that she claims induced her to

---

[2] As Bricklin adopted the Berges Defendants' arguments, *see* No. 17-CV-4973, Dkt. Nos. 24 & 29, the Court uses the word "Defendants" even though the Berges Defendants principally advanced the arguments considered in this section.

purchase a security, her membership unit in the Gallery. *See* Compl. ¶¶ 27-44.³ Specifically, Arneberg claims that Berges 1) falsely represented that he had sold twenty-four paintings from the artist John Ransom Phillips in the eighteen-month period prior to his solicitation of Arneberg, *see id.* ¶¶ 8, 33; 2) falsely represented that her money would go to pay the "go-forward operating costs" of the Gallery when he actually intended to use the monies for his own personal benefit, *id.* ¶¶ 10, 13, 34-35; 3) omitted the fact that Arneberg's father declined to invest, *see id.* ¶¶ 16, 37; and 4) omitted that he had an agreement with the Gallery entitling him to guaranteed payments, *id.* ¶¶ 25, 38. Arneberg seeks rescission of the agreement, or, alternatively, compensatory damages of $500,000 plus reasonable attorneys' fees, interest and costs. *Id.* ¶ 44.

Section 29(a) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78cc(a), is an antiwaiver provision that "generally invalidates blanket releases of liability" with respect to federal–securities claims. *Pasternack v. Shrader*, 863 F.3d 162, 171 (2d Cir. 2017). Both sides appear to be in general agreement that releases of federal securities law claim may only be valid "as to mature, ripened claims of which the releasing party had knowledge before signing the release." Opp. at 7 (citing *Goodman*, 582 F.2d at 402); *accord* Reply at 6-7 ("It is well established that a Release of federal securities claims is enforced where the release is not an anticipatory waiver but instead covers events that occurred before the Release was signed.").

Yet while the Release at issue is not anticipatory here, as the various misrepresentations or fraudulent schemes Plaintiff alleges occurred prior to her signing of the Release, the Court's analysis cannot end there.

First, Plaintiff claims that because she was not aware of her securities claim when she executed the Release, § 29(a) does not allow her to waive it. Opp. at 2 (citing *Mittendorf v. J.R. Williston & Beane, Inc.*, 372 F. Supp. 821, 834-35 (S.D.N.Y. 1974)). Plaintiff assumes that § 29(a) voids all releases if plaintiffs did not have "actual knowledge" of their securities claims,

---

³ The Berges Defendants do not directly address whether Plaintiff's membership interest constitutes a security under the Securities Exchange Act, and the Court assumes here that it does. *See generally* Reply Memorandum of Law ("Reply"), Dkt. No. 59, at 7-8.

7

but the Second Circuit has never held that. In *Lancer Offshore*, cited by both parties, the plaintiffs argued that since they did not have "actual knowledge" of the alleged violations of federal securities laws, § 29(a) voids the settlement and release. *Lancer Offshore, Inc. v. Dominion Income Mgmt. Corp.*, No. 01-CV-4860 (LMM), 2002 WL 441309, at *6 (S.D.N.Y. Mar. 20, 2002). The *Lancer* Court held that plaintiffs "cannot now avoid the unambiguous contract by arguing that they did not have 'actual knowledge,'" and instead followed other federal courts that had concluded "that releases are valid as to ripened claims. *Id.* (collecting cases and citing *Beaumont Capital Corp. v. Bear, Stearns & Co.*, 704 F. Supp. 362, 363 (S.D.N.Y. 1988) for the proposition that a release may be valid where plaintiff "could have reasonably discovered that he had been wronged"); *accord Goodman*, 582 F.2d at 403 (holding that a release may be valid for securities claims of which the releasing party "should have known upon reasonable inquiry").

Regardless of which standard applies, however, the undisputed facts here do not demonstrate that, at the time she signed the Release, Plaintiff either had actual knowledge of the alleged misrepresentations on which she bases her securities claim, or that she could have known about them upon reasonable inquiry. The Court has been presented with scant evidence of when Plaintiff allegedly learned that the representations Berges made to her were allegedly false or fraudulent. While it may turn out that these representations either were not false or material, or were known or reasonably could have been known to Plaintiff at the time she signed the Release, on the basis of the undisputed facts presented here the Court cannot grant summary judgment.

Second, summary judgment is not warranted on Plaintiff's securities claim for another related reason. In a recent case, the Second Circuit made it clear that, depending on the context in which the agreement arises, some retrospective releases are still voided by § 29(a). *Pasternack*, 863 F.3d at 171-73. "[A] waiver signed in the context of a settlement agreement may release securities-fraud claims," *id.* at 172 (citing *Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1114-15 (2d Cir. 1977)), or "a release signed outside a settlement context might be enforceable because the releaser would essentially be using an alleged

8

securities violation as a bargaining chip to receive some remedial benefit." *Id.* However, the antiwaiver provision forbids enforcement of agreements to waive "compliance" with the statute, and "the sale of securities conditioned on the buyer's complete release of the seller would in effect license non-compliance with the securities laws, in violation of § 29(a)." *Id.*

The question ultimately becomes about the context in which the release was signed – namely, was the Release a valid, bargained-for settlement such that 'compliance' with the securities laws was established? *See id.* at 173 (stating that the "general principle" is that acceptance of some consideration "in exchange for a release of securities-fraud claims is tantamount to establishing 'compliance' with the securities laws"). The district court in *Lancer* noted that both parties were represented by counsel, and had met to discuss settlement after the threat of litigation, citing to *Locafrance* for the proposition that the "the court need not look further than the language in the release to find the intent of parties where [the] release 'is signed in a commercial context by parties in a roughly equal bargaining position and with ready access to counsel.'" *Lancer,* 2002 WL 441309, at *6 (quoting *Locafrance,* 558 F.2d at 1115). However, the undisputed facts do not demonstrate a "commercial context" or "equal bargaining position" here, and counsel was definitively not present at the execution of the Release.

Whether § 29(a) applies to this release or not is inextricably linked to questions of fact and credibility regarding the circumstances of its execution and what was known at the time, questions properly put to jury. Defendants argue that at the time Arneberg signed the release, she knew about the alleged securities fraud, but they simply point to testimony of Georges Berges. Ans. Pls. 56.1, ¶ 17 (citing Kokhba Declaration in Support of Reply ("Kokhba Reply Decl."), Ex. B, 233:13-24). In a June 9, 2017 deposition, Berges testified that he "felt [he] needed some kind of release" because "Will [Marin] was calling everyone and threatening me" and "[Arneberg] admitted saying that I was a bad person, I was dishonest." Kokhba Reply Decl., Ex. B, 233:13-24. A factfinder *could* reasonably determine from testimony of that nature that Arneberg knew the facts underlying her securities fraud claims but chose to sign the release anyway in exchange for a waiver of the 60-day notice provision in the Artist Agreement. *See*

9

*infra* Part III.B.1. However, based on the current record, a factfinder may also reasonably determine that the context under which Arneberg signed the release is insufficiently equal in bargaining power and insufficiently knowing to excuse compliance with any provision of the federal securities laws. *Compare Korn v. Franchard Corp.*, 388 F. Supp. 1326, 1329 (S.D.N.Y. 1975) (finding that plaintiffs' endorsement of checks and accompanying releases did not excuse compliance with federal law and was instead a valid waiver of the right to litigate those claims), *with Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476, 490 (S.D.N.Y. 2005) (finding plaintiffs' claims not precluded by release because they "did not constitute a settlement of an existing dispute, but rather purported prospectively to waive plaintiffs' rights to pursue causes of action of which they were not yet aware.").

Because consideration of Plaintiff's claims under the Securities Exchange Act, despite the presence of the release, necessarily depends on analysis of the factual situation in which the release was considered and signed (which, in turn, would depend on credibility determinations), summary judgment cannot be properly granted on Count I.[4] *Rem*, 38 F.3d at 644.

### B. Summary Judgment Is Warranted on the Common Law Claims, as the Clear Terms of the Release Apply

Despite the plain terms of the release, Plaintiff attempts to insert factual disputes regarding its validity in order to defeat Defendants' motion for summary judgment on state law claims in Counts II, III, and IV. The Court considers each of Plaintiff's separate grounds for setting aside the release in turn.

#### 1. Lack of Consideration

First, Plaintiff argues that the release is void or unenforceable for lack of consideration. Defendants contend that Berges agreed to early termination of Arneberg's artist agreement with the Gallery, foregoing the 60 days' notice required by the Agreement, in exchange for Arneberg signing the release. Reply at 5-6. Plaintiff responds that no discussions about that bargain were

---

[4] Because the Court denies summary judgment with respect to Count I based on the anti-waiver provision of § 29(a), it declines to reach Plaintiff's additional arguments with respect to that Count.

had, she never sought to terminate the agreement, and the Gallery effectively unilaterally waived the notice provision. Opp. at 14. Plaintiff's argument is unavailing and largely redundant with her argument on fraud.

First, the parties agree that New York law governs the Court's interpretation of the release, *see* Opp. at 8; Reply at 4-5, and as a result, a lack of consideration is not a valid defense in this situation. Under New York law, a release is enforceable even in the absence of consideration so long as it is given in writing. *See* N.Y. Gen. Oblig. Law § 15-303 (West 2001) ("A written instrument which purports to be a total or partial release...shall not be invalid because of the absence of consideration or of a seal."); *see also Dozier v. Deutsche Bank Tr. Co. Am.*, No. 09-CV-9865(LMM), 2011 WL 4058100, at *4 (S.D.N.Y. Sept. 1, 2011); *Sedona Corp. v. Ladenburg Thaimann & Co.*, No. 03-CV-3120(LTS)(THK), 2009 WL 1492196, at *2 (S.D.N.Y. May 27, 2009).

Second, putting aside the New York provision, Plaintiff's consideration defense still fails. Plaintiff *did* receive something to which she was not otherwise entitled – waiver of the 60 day provision in the agreement. Plaintiff claims that there was no consideration because she did not know what she signed, but that is an argument better directed to fraud, as a failure to read the document does not negate consideration. *See, e.g., Toulamis v. Chalem*, 548 N.Y.S.2d 493, 495 (N.Y. App. Div. 1989) ("A party is under an obligation to read a document before he or she signs it, and one cannot avoid the effect of a release upon the ground that he or she did not read it or know its contents.").

### 2. Fraudulent Inducement

Plaintiff next argues that the release should be set aside as her signature was fraudulently induced. Arneberg paints a picture of unscrupulous defendants who told Applegate the document was a receipt in the hopes that Arneberg would be told the same, and, without counsel present, would quickly sign the document without reading it. Opp. at 12-13. Even viewing all disputed

facts in the light most favorable to Plaintiff, the nonmovant, Arneberg is still unable to establish fraudulent inducement as a matter of law.

"A party seeking to invalidate a release due to fraudulent inducement must 'establish the basic elements of fraud, namely a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury.'" Opp. at 10 (quoting *Long v. O'Neill*, 5 N.Y.S.3d 42 (2015)).[5] But even accepting Plaintiff's account of the events, her reliance on Applegate's alleged statement that the release was a "receipt" is not justifiable. The release was prominently and boldly titled "release," contained repeated bolded references to the world "release" throughout the mere three paragraphs of the one-page document, and the language was unambiguous in releasing Plaintiff's claims. *See generally* Release; Reply at 2 (citing Kokhba Reply Decl., Ex. A (Deposition of Ingrid Arneberg), at 91:20-92:3). The word "receipt" does not appear on the page. *Id.* Even a cursory glance at the document would be sufficient to recognize that it was a release and not a receipt, regardless of whatever oral representations Plaintiff claims were made by Applegate at the time.

Plaintiff's defense – that she did not read the document – is insufficient. *See, e.g., Myskina v. Conde Nast Pubs, Inc.*, 386 F. Supp. 2d 409, 414-15 (S.D.N.Y. 2005) (failure to read release does not excuse plaintiff from being bound); *Morby v. Di Siena Assocs. LPA*, 737 N.Y.S.2d 678, 680 (N.Y. App. Div. 2002) ("the allegedly fraudulent misrepresentation…could have been readily discovered upon the reading of the document, and plaintiff cannot now avoid his obligations under a release he did not read merely by asserting that he 'thought' it was something else"); *Chieco v. Paramarketing, Inc.*, 643 N.Y.S.2d 668, 670 (N.Y. App. Div. 1996); *cf. Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG), 2016 WL 4617159, at *12 (E.D.N.Y. Sept. 2, 2016) (finding fraud where design of documents themselves, including use of deceptive logo, could "lead a reasonable juror to conclude that Defendants intended to deceive

---

[5] Plaintiff's citation is incorrect. The quotation comes from *Global Minerals & Metals Corp. v. Holmes*, 824 N.Y.S.2d 210, 214 (N.Y. App. Div. 2006).

Plaintiffs as to the nature of the documents they were signing."). "A party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms." *Romero v. Khanjiou*, 623 N.Y.S.2d 262, 263 (N.Y. App. Div. 1995) (citation and internal quotation marks omitted); *accord Shklovskiy v. Khan*, 709 N.Y.S.2d 208, 209-10 (N.Y. App. Div. 2010) ("[A] party will not be excused from his failure to read and understand the contents of a release."). In fact, even persons illiterate in the English language are generally bound to the terms of an agreement they signed. *See Holcomb v. TWR Express, Inc.*, 782 N.Y.S.2d 840 (N.Y. App. Div. 2004); *Sofio v. Hughes*, 556 N.Y.S.2d 717 (N.Y. App. Div. 1990). "[A] party signing a document is bound by his or her signature, and may not rely on an oral representation that there is no contract when the face of the document would indicate otherwise." *Sotheby's Inc. v. Dumba*, No. 90-CV-6458 (KMW), 1992 WL 27043, at *6 (S.D.N.Y. Jan. 31, 1992); *accord Generale Bank, New York Branch v. Wassel*, 779 F. Supp. 310, 315 (S.D.N.Y. 1991) (holding a note enforceable despite defendant's argument that he unknowingly signed the note and its security agreement in reliance upon an oral representation that it was a mere application for financing that would not bind him).

Based on the plain text of the release, a reasonable jury could not conclude that the release should be set aside for reason of fraudulent inducement.

To the extent that Plaintiff's argument that she was denied a "full and fair opportunity" to consider the document is separate from her fraudulent inducement argument, it too fails as a matter of law. Plaintiff does not allege that she sought more time to review the document, or to have her lawyer review it, and that she was denied that opportunity. Additionally, Applegate emailed a copy of the executed release to Plaintiff the very next day, Reply at 3 (citing Deposition of Ingrid Arneberg at 93:14-95:6), and yet there is no evidence that she attempted to have the release set aside or vacated until the present litigation. While the ultimate burden remains on the movant, given the clear terms of the release at issue, Plaintiff "must come forward with specific evidence demonstrating the existence of a genuine dispute of material

fact," as "conclusory allegations or unsubstantiated speculation" is not enough. *Brown*, 654 F.3d at 358.

### 3. Mutual Mistake of Fact

Plaintiff also seeks to set aside the release as a product of a "mutual mistake" of fact. Opp. at 14. This argument too fails. Whatever mistaken impression Plaintiff may have been under, there is no dispute that the other party to the release, the Gallery, was not mistaken in signing it. *See id.* at 12 ("Clearly, Defendants were aware of the nature of the document...."). Plaintiff argues for mutual mistake as though Applegate were the other party, *see id.* at 15, but what Applegate knew or did not know about the document does not create a genuine issue of material fact as to establishing mutual mistake. He was a witness and not a party to the agreement.

### 4. Breadth and Clarity of the Release

Finally, Arneberg contends that the document "does not clearly and unambiguously encompass claims arising out of her $500,000 investment or membership interest in the [Gallery]." Opp. at 3. She argues that the release was not broad enough, and directed only to "any and all claims relating to releasor's art work." Opp. at 17. Then, in the next sentence, Plaintiff argues that the language "including but not limited to" is "not specific enough to include [her] claims." *Id.* At the same time, the release is somehow both too broad and too specific. Plaintiff offers no legal support for either argument.

The release covers "all actions, causes of action...contract[s], controversies, agreements, promises...claims and demands whatsoever, in law, admiralty or equity,...including but not limited to any and all claims relating to RELEASOR'S ART WORK." *See* Release. Upon the plain reading of this clause, and absent any contrary authority, the language is clear and unambiguous in releasing Defendants from the present claims.

\* \* \* \* \*

The clear language of the release Plaintiff signed releases Defendants from liability for Counts II, III, IV, and V.[6] Because Plaintiff's arguments as to why the release should not be enforceable against her are unsupported in the law, Defendants motion for summary judgment is GRANTED as to these four counts.

### C. Whether the Release Applies to Defendant Bricklin Is Indeterminable Based Upon the Undisputed Facts

Defendant Malcolm Bricklin piggybacks on the Berges Defendants' motion for summary judgment, alleging that he was either a "contractor" or "agent" within the definition of the release, which discharges "Georges Berges Galleries, LLC, and its principals, members, employees, *contractors*, affiliates, subsidiaries, *agents*, and assigns...." No. 17-CV-4973, Dkt. No. 24 at 2 (quoting Release (emphasis added)). Plaintiff does not dispute this characterization, but instead responds that the release should not protect Bricklin, as he was no longer affiliated with the Berges Defendants on May 23, 2016, the day the release was executed. *See* No. 17-CV-4973, Dkt. No. 26 at 2. It is undisputed that the Berges Defendants and Bricklin terminated their relationship around June 2015, when the gallery opened. *Id.* Plaintiff claims the release only protects agents and contractors as they existed on the date of execution, and not prior agents, contractors, or affiliates. *Id.*

While Plaintiff offers no legal support suggesting her interpretation should be the default absent express language seeking to incorporate former affiliates, Bricklin ultimately carries the burden as the movant here. Bricklin has failed to submit any evidence of the intention of the parties (or even of the drafter), and the present-tense nature of the release's language leaves open the ambiguity of its scope. *See Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 517 (2d Cir.

---

[6] Even though Defendants stylize their motion for summary judgment as mandating dismissal of the Complaint in its entirely, Plaintiff did not address her arguments to Count V (accounting). Regardless, as the claim for accounting appears to be equitable in nature, *see Soley v. Wasserman*, No. 08-CV-9262 (KMW), 2013 WL 1655989, at *2-3 (S.D.N.Y. Apr. 17, 2013), and is predicated on the presence of breaches of fiduciary duties, it falls with the breach of fiduciary duty claim. *Bezuszka v. L.A. Models Inc.*, No. 04-CV-7703 (NRB), 2006 WL 770526, at *17 (S.D.N.Y. Mar. 24, 2006) (stating that accounting under New York law requires a fiduciary relationship and a breach of fiduciary duty).

2001) ("Where an agreement is ambiguous, a court may resort to extrinsic evidence to determine the parties' intent."). While Defendant likely has the better interpretation – especially given that a general release would normally seek to cover former employees, at the very least, to avoid vicarious liability – it is not the province of the Court on summary judgment to substitute its judgment for the judgment of a jury who may reasonably conclude either way upon consideration of further testimony.

Accordingly, Defendant Bricklin's motion for summary judgment is denied.

## IV. Conclusion

For the foregoing reasons, Defendants Georges Berges and the Gallery are GRANTED summary judgment as to Counts II, III, IV, and V, but DENIED summary judgment as to Count I. Defendant Malcolm Bricklin is DENIED summary judgment. This resolves 16-CV-8955, Dkt. No. 49 and 17-CV-4973, Dkt. Nos. 22, 24.

Within seven (7) days of the issuance of this Order, the parties are directed to file a joint status letter and to propose dates for a status conference. Counsel are also ordered to meet and confer regarding settlement within fourteen (14) days of this Order.

SO ORDERED.

Dated: March __, 2018
New York, New York

ALISON J. NATHAN
United States District Judge